UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| Carson L. Whatley, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| Board of Regents of the University System of Georgia, | ) | **Jury Trial Demanded** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW, Plaintiff Carson Whatley ("Mr. Whatley"), and files this *Complaint for Damages and Injunctive Relief* against Defendant Board of Regents of the University System of Georgia, for violating Titles I and II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701. In support thereof, Plaintiff offers the following:

### JURISDICTION AND VENUE

1. This Court has original, federal-question jurisdiction over this action, pursuant to 28 U.S.C. § 1331.

2. Defendant resides, and the acts and omissions giving rise to Plaintiff's claims occurred, within this district and division. This Court therefore has personal jurisdiction over Defendant, and venue is proper in this Court.

## PARTIES

3. Mr. Whatley is a citizen of the United States and resident of the State of Georgia. He submits to the jurisdiction of this Court.

4. Defendant is the agency of the State of Georgia which administers all public universities in the State, including Georgia State University ("GSU").

5. At all times relevant to this complaint, Mr. Whatley was an employee of Defendant, working for Defendant in the GSU Police Department.

6. Defendant is a recipient of federal financial assistance for the purposes of the Rehabilitation Act.

7. Defendant may be served with the summons and complaint at its Office of Legal Affairs, located at 270 Washington St SW, Atlanta, GA 30034.

## FACTS

8. Mr. Whatley began his employment with Defendant on or about January 15, 2016. His job title throughout his employment with Defendant was Police Sergeant.

9. Mr. Whatley is right-handed and shoots right-handed.

10. In or around March of 2022, Mr. Whatley suffered an injury to his right shoulder.

11. Among other things, this injury impaired his accuracy with his sidearm.

12. Upon examining his injury, Mr. Whatley's medical provider determined the injury could be treated with a regimen of moderate-intensity physical therapy.

13. As part of his treatment, Mr. Whatley's medical provider ordered several modest work restrictions. For example, she ordered him not to climb ladders or spend more than twenty-five percent of his shift reaching for things above his right shoulder.

14. Mr. Whatley's medical provider anticipated Mr. Whatley would respond well to physical therapy and so ordered the restrictions to be in place only from April 21, 2022, through June 18, 2022, a period of less than two months.

15. During this same time period, Mr. Whatley was due to take an annual test to recertify his proficiency handling firearms.

16. Because of his temporary disability, Mr. Whatley failed the test three times between April 1, 2022, and May 10, 2022.

17. In late April of 2022, GSU Chief of Police Anthony Coleman contacted Mr. Whatley to ask him why he failed the recertification test on his first two attempts.

18. Mr. Whatley told Chief Coleman about his injury and prescription for temporary work accommodations.

19. As an accommodation for his disability, Mr. Whatley asked to be allowed to wait until after he had completed his physical therapy to retake the certification test.

20. Mr. Whatley had passed the test consistently every year since 1988 and was confident he would pass it again if his shoulder was allowed to recover first.

21. For no specific reason, Defendant denied Mr. Whatley's request.

22.     Defendant ordered him to take the recertification test a third time May 10, 2022, and, after he failed because of his temporary disability, Defendant terminated his employment effective May 11, 2022.

23.     The letter of termination Defendant provided Mr. Whatley states as the only reason: "Failing to Qualify for Firearms."

24.     On May 21, 2022, Mr. Whatley timely filed a grievance of his termination.

25.     In a letter dated August 12, 2022, Defendant notified Mr. Whatley it was affirming his termination.

26.     In early August of 2022, before he had any legal counsel, Mr. Whatley filed what the Equal Employment Opportunity Commission ("EEOC") in Atlanta refers to as an "inquiry," notifying the EEOC of the termination of his employment, summarizing the above facts, and expressing his opinion that the termination constituted disability discrimination in violation of the ADA.

27.     On August 10, 2022, the EEOC emailed Mr. Whatley notifying him of the charge number it had assigned him and acknowledging he "recently submitted an inquiry, 410-2022-07837, about alleged employment discrimination by Georgia State University Police Department." In this email, the EEOC also informed him it would not "take any action on [his] inquiry" until he scheduled an interview with an EEOC intake staff member.

28. The email from the EEOC directed Mr. Whatley to a "calendar" where he could schedule his interview, but when Mr. Whatley checked the calendar, it was full.

29. In the weeks that followed, Mr. Whatley continued to check the EEOC's calendar at least once a week for availability, but the calendar was always full.

30. Mr. Whatley also called the EEOC at least once a week, requesting assistance scheduling his interview so that he could file a formal charge within the timeframe the EEOC gave him, but on the occasions someone at the EEOC did pick up the phone, they just directed him to the calendar.

31. Finally, on April 6, 2023, the EEOC emailed Mr. Whatley, informing him it would be calling him in two to three weeks to assist him with his interview.

32. Mr. Whatley waited, but the EEOC did not call him as it said it would.

33. On June 1, 2023, Mr. Whatley again emailed the EEOC asking when someone would be contacting him.

34. On Sunday, June 18, 2023, the EEOC responded to Mr. Whatley's email and informed him someone would call him that week to schedule—not conduct—his interview.

35. The EEOC again did not call Mr. Whatley as it said it would.

36. On June 23, 2023, Mr. Whatley sent another email to the EEOC about his interview, and on June 24, the EEOC responded, informing him that his telephone interview was scheduled for July 10, 2023.

37. On July 10, 2023, the EEOC finally conducted the interview, and on July 11, 2023, Mr. Whatley signed the "EEOC Form 5" that his interviewer prepared for him, supplementing the inquiry he had filed and using the same "charge number" assigned to him the previous August.

38. On or around July 18, 2023, the EEOC recorded Mr. Whatley's signed "Form 5."

39. On September 4, 2023, the EEOC informed Mr. Whatley that it had identified his charge "as appropriate for early mediation," meaning the EEOC still had not yet begun its investigation.

40. Thereafter, for the first time since Mr. Whatley first asked the EEOC to begin investigating his termination, the EEOC requested a response from Defendant to Mr. Whatley's allegations.

41. In its response, dated October 25, 2023, Defendant contended that Mr. Whatley's claims were barred for timeliness.

42. On the merits, Defendant's response to the EEOC did not present any evidence, authority, or argument that Mr. Whatley is not protected by the ADA, that his requested accommodation was unreasonable, that his requested accommodation

was unduly burdensome, or that his employment was terminated for any reason at all besides his temporary disability. Defendant only flatly denied knowing about Mr. Whatley's temporary disability and request for accommodations.

43. Emails from April and May of 2022 confirm that not only was Chief Coleman aware of Mr. Whatley's disability and request to be allowed to postpone his recertification temporarily, but so were at least two other individuals in Mr. Whatley's chain of command, a Lieutenant and a Major.

44. After his termination, in the Fall of 2022, Mr. Whatley was eventually able to secure employment again as a peace officer.

45. As expected, after completing his physical therapy, Mr. Whatley passed the firearm recertification test on November 19, 2022, and then again in December of 2023.

## LEGAL CLAIMS

### Count I – Disability Discrimination, In Violation of Title I of the Americans with Disabilities Act ("ADA")

46. Title I of the ADA prohibits qualified employers from discriminating against qualifying employees, and it specifically identifies, as one form of prohibited discrimination, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the

accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

47. GSU has more than fifteen employees, and Defendant is therefore a "covered entity" for the purposes of Title I of the ADA. 42 U.S.C. §§ 12111(2); 12111(5).

48. Mr. Whatley's employment history with GSU, as set forth above, demonstrates his ability to perform the essential functions of his employment position with and without reasonable accommodation, and so he is a "qualified individual" for the purposes of Title I of the ADA. 42 U.S.C. § 12111(8).

49. At all relevant times, Mr. Whatley suffered from a "disability" within the meaning of the ADA, as defined at 42 U.S.C. § 12102, in that his shoulder injury substantially impaired him in numerous major life activities, including but not limited to lifting things, reaching above his head, and hugging his family.

50. The accommodation Mr. Whatley requested—to be allowed two months of physical therapy as prescribed by his doctor so that his shoulder could heal before taking the firearm recertification test—was a reasonable accommodation considering, among other things, his thirty-plus-year history of passing the same test when his shoulder was not disabled.

51. Granting Mr. Whatley's request would not have required GSU or Defendant generally to undertake significant difficulty or expense—financially, operationally,

or otherwise—and so would not have imposed an "undue hardship," as that term is defined in 42 U.S.C. § 12111(10).

52. Defendant's failure to provide Mr. Whatley the accommodation he requested is not in any way due to Mr. Whatley's failure to engage in good-faith discussions regarding his temporary disability and related needs.

53. Besides Mr. Whatley's temporary need for this one reasonable accommodation, Defendant has offered no other explanation for terminating his employment and has stated in writing that his disability is the one and only reason Defendant terminated his employment.

54. Defendant is therefore liable to Mr. Whatley for disability discrimination in violation of Title I of the ADA. Specifically, for its illegal conduct, Defendant is liable to Mr. Whatley for both prospective relief and compensatory damages including but not limited to pain and suffering, lost wages, attorneys' fees, and other costs of litigation.

### Count II – Disability Discrimination, In Violation of Title II of the Americans with Disabilities Act ("ADA")

55. Title II of the ADA provides that no "public entity" shall discriminate against a "qualified individual with a disability" with respect to said entity's "services, programs, or activities." 42 U.S.C. § 12132.

56. In the Eleventh Circuit, Title II's protections extend to employees of public entities. *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 820 (11th Cir. 1998).

57. GSU, as an instrumentality of the State of Georgia, is a "public entity" for the purposes of Title II of the ADA, as that term is defined in 42 U.S.C. § 12131(1).

58. Employment is one of the "services, programs, or activities" GSU provides as a public entity, as those terms are used in 42 U.S.C. § 12132.

59. As set forth above, at all relevant times, Mr. Whatley was fully capable of discharging his job duties with reasonable accommodation, and so he was a "qualified individual with a disability" for the purposes of Title II of the ADA, as that term is defined in 42 U.S.C. § 12131(2).

60. As set forth above, Defendant, by reason of Mr. Whatley's disability, terminated his employment, thereby denying him equal opportunity to participate in its services as a public employer.

61. Defendant is therefore liable to Mr. Whatley for disability discrimination in violation of Title II of the ADA. Specifically, for its deliberate indifference to his rights under the ADA, Defendant is liable to Mr. Whatley for both prospective relief and compensatory damages including but not limited to pain and suffering, lost wages, attorneys' fees, and other costs of litigation.

**Count III – Disability Discrimination, in Violation of the Rehabilitation Act**

62. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

63. Defendant receives "Federal financial assistance," as that term is used in 29 U.S.C. §794(a).

64. Substantively, claims under the Rehabilitation Act and the ADA "are governed by the same standards." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

65. Defendant is therefore liable to Mr. Whatley for disability discrimination in violation of the Rehabilitation Act for all the same reasons as under Titles I and II of the ADA as set forth above. Specifically, Defendant is liable to Mr. Whatley for both prospective relief and pecuniary damages including but not limited to lost wages, attorneys' fees, and other costs of litigation.

    WHEREFORE, Plaintiff prays:

a.      for a trial by jury;

c.      for an order declaring Defendant to be in violation of the ADA and Rehabilitation Act;

d. for an award of damages to Plaintiff, in an amount determined by the enlightened conscience of the jury;

e. for an award of reasonable attorneys' fees and costs;

f. for an award of prejudgment and post-judgment interest; and

f. for any further and additional legal and equitable relief as the Court deems just and proper.

Respectfully submitted this February 22, 2024.

/s/*Jake Knanishu*
Jake Knanishu
Georgia Bar No. 597103
James Radford
Georgia Bar No. 108007
Radford Scott, LLP
315 W. Ponce de Leon Ave., Suite 1080
Decatur, Georgia 30030
T: (678) 271-0300
F: (678) 271-0311
jradford@radfordscott.com
jknanishu@radfordscott.com

*Counsel for Plaintiff*